LAURIE L. NODA (4753)
Assistant Utah Attorney General
TONY R. PATTERSON (5128)
Assistant Utah Attorney General
MARK SHURTLEFF (4666)
Utah Attorney General
Attorneys for Defendants
160 East 300 South, Fifth Floor
P.O. Box 140872
Salt Lake City, Utah 84114-0872
Telephone: (801) 366-0310
Facsimile: (801) 366-0315
E-mail:  lnoda@utah.gov

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| JESTINA CLAYTON,<br><br>        Plaintiff,<br><br>v.<br><br>MARK STEINAGEL,<br><br><br>        Defendant. | **MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.  2:11-cv-00379-DS<br><br>Judge  David Sam |

Pursuant to Rule 56-1(b) of the Civil Rules of Procedure of the United States District

Court for the District of Utah, Defendant files this Motion for Summary Judgement and

Memorandum in Support of its Motion.

Dated this _____day of May 2012.


/s/Laurie L. Noda_____
Assistant Attorney General
Counsel for Defendant

Dated this 2nd day of May 2012.




/s/Laurie L. Noda
Assistant Attorney General
Counsel for Defendant

LAURIE L. NODA (4753)
Assistant Utah Attorney General
TONY R. PATTERSON (5128)
Assistant Utah Attorney General
MARK SHURTLEFF (4666)
Utah Attorney General
Attorneys for Defendants
160 East 300 South, Fifth Floor
P.O. Box 140872
Salt Lake City, Utah 84114-0872
Telephone: (801) 366-0310
Facsimile: (801) 366-0315
E-mail:  lnoda@utah.gov

---

### IN THE UNITED STATES DISTRICT COURT

### IN AND FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| JESTINA CLAYTON,<br><br>              Plaintiff,<br><br>v.<br><br>MARK STEINAGEL,<br><br><br>              Defendant. | **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case No.  2:11-cv-00379-DS<br><br>Judge  David Sam |

Pursuant to Rule 56-1(b) of the Civil Rules of Procedure of the United States District Court for the District of Utah, Defendant files this memorandum of authorities in support of its motion for summary judgment.

## INTRODUCTION

Plaintiff Jestina Clayton has sued Defendant Mark Steinagel, Director of the Division of Occupational and Professional Licensing for alleged violations of the Due Process, Equal Protection and Privileges and Immunities Clauses of the Fourteenth Amendment.  Plaintiff also alleges violations of Due Process, Utah Uniform Operation and Utah Inherent and Inalienable Rights under the Utah Constitution.  Plaintiff claims irreparable harm because Utah requires her to meet curriculum requirements that are unnecessary for her to practice her profession of African hair braiding. Defendant is entitled to summary judgment as a matter of law in that the cosmetology curriculum requirements governing hair styling, including hair braiding are rationally related to the state's interest in protecting the public health, safety and welfare.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that will affect the outcome of the suit under governing law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. Summary judgment is still appropriate when the parties do not dispute the events that occurred, but rather dispute the interpretation that should be given to those facts.

2

## STATEMENT OF FACTS

1.  Defendant, Mark Steinagel, is the Director of the Utah Division of Occupational and Professional Licensing ("DOPL"). (Steinagel deposition p. 6).

2.  Defendant's responsibilities as division director are set forth under Utah Code Ann. § 58-1-104.  (Steinagel deposition p. 9).

3.  Defendant's responsibilities include enforcing the licensing laws and requirements of the Utah Barber, Cosmetologist/Barber, Esthetician, Electrologist and Nail Technician Licensing Act, (Cosmetology/Barber Act) set forth under Utah Code Ann. §§ 58-11a-101 et seq. (Steinagel deposition p. 9).

4.  Defendant has assigned bureau managers to assist in carrying out his responsibilities to oversee regulation of the various professions regulated by DOPL. (Steinagel deposition p.10).

5.  Defendant has assigned Sally A. Stewart as the bureau manager to oversee the Cosmetology/Barber Act. In addition, Defendant works with a board comprised of cosmetology/barber representatives who advise him on the promulgation of rules and enforcement of the Act. (Steinagel deposition pp.10-18; Stewart deposition pp.6-7, 10-12).

6.  Plaintiff, Jestina Clayton, is a legal resident alien of the United States and resident of Centerville in the County of Davis, Utah.  (Complaint p. 3).

7.  On March 1, 2010, Plaintiff met with the board and bureau manager Sally Stewart.  At that meeting, Plaintiff gave a presentation about the technique of African hairbraiding and how it is done. (Complaint p. 8; Stewart deposition pp. 8,16, 18-20).

8.  On March 1, 2010, following Plaintiff's presentation, the board and Ms. Stewart

informed Plaintiff that the technique of African Hair braiding fell within the statutory definition

of cosmetology/barbering. In addition, Plaintiff was told that if she wanted to braid hair for

money she would have to obtain a license to do so. Plaintiff was also informed that if she wanted

an exemption from the licensure requirements, she would have to get that exemption from the

Utah State Legislature. (Stewart deposition pp. 21-23).

9.  On or around March 2, 2010, Plaintiff contacted Defendant to ask about the license

requirements for braiding hair. Defendant confirmed what the Board told her about the

curriculum requirements and that she would have to contact the legislature to get the law changed

to exempt braiding from the licensing requirements. (Steinagel deposition p. 21).

10.  Defendant had no further contact with Plaintiff after the March 1, 2010 board

meeting until Plaintiff filed her complaint on or around April 26, 2011. (Steinagel deposition pp.

21-22; Stewart deposition pp. 23, 72).

11.  Utah Code Ann. § 58-11a-201(3) establishes that DOPL, in conjunction with the

Board, shall have enforcement responsibility for the Cosmetology Act, including over the

Cosmetology Act's licensing requirements. (Complaint p. 7).

12.  Utah Code Ann. §§ 58-1-106(1)(a), 58-1-202(1)(a) and 58-11a-201(3) provide that

DOPL, in conjunction with the Board, may prescribe, adopt, and enforce rules to administer the

Cosmetology Act. (Complaint p. 7).

13. Utah Code Ann. § 58-11a-102(26)(a) defines cosmetology/barbering as:

> (i) styling, arranging, dressing, curling, waving, permanent waving, cleansing,
> singeing, bleaching, dyeing, tinting, coloring, or similarly treating the hair of the
> head of a person;

4

(ii) cutting, clipping, or trimming the hair by the use of scissors, shears, clippers, or other appliances;

(iii) arching eyebrows, or tinting eyebrows or eyelashes, applying eyelash extensions, or any combination of these procedures;

(iv) removing hair from the face, neck, shoulders, arms, back, torso, feet, bikini line, or legs of a person by the use of depilatories, waxing, or shaving equipment;

(v) cutting, curling, styling, fitting, measuring, or forming caps for wigs or hairpieces or both on the human head; or

(vi) practicing hair weaving or hair fusing or servicing previously medically implanted hair.

(Complaint p. 7).

14.  African hair braiding or natural hair braiding is a styling technique, which falls within the definition of the scope of practice of cosmetology/barbering.  This styling technique involves treating the hair on the head of a person. (Ferrell deposition pp. 9-10; Stewart deposition, pp. 15-16).

15.  Utah Code Ann. § 58-11a-301(1)(a)(iv) provides that a person must obtain a license to "engage in the practice of .... cosmetology/barbering." (Complaint p. 7).

16.  Utah Code Ann. § 58-11a-502(1) provides that it is unlawful to practice or engage in, or attempt to practice or engage in cosmetology/barbering without a license. (Complaint p. 7).

17.  Utah Code Ann. § 58-11a-304(5) provides that those who engage in cosmetology/barbering without compensation do not require a license. (Complaint p. 8).

18.  Utah Code Ann. § 58-11a-302(4) requires cosmetologist/barber license applicants to take one of three routes to obtain a cosmetologist/barber license:

    a.        graduate from "cosmetology/barber school whose curriculum consists of a

                minimum of 2,000 hours of instruction.... over a period of not less that 50 weeks;

    b.        graduated from a cosmetology/barber school outside of Utah that does not require

                2,000 hours of instruction, but only after an additional 4,000 hours of practice as a

                licensed cosmetologist/barber, or:

    c.        complete an approved cosmetology/barber apprenticeship, which per Utah Code

                Ann. § 58-11a-306(2)(a) and Utah Admin. Code R 156-11a-705, 801, requires at

                least 2,500 hours of training consistent with a cosmetology school curriculum

                over a period of not less than 15 months.

(Complaint p 9; Stewart deposition pp. 33-34, 81-83).

    19.  The Barber, Cosmetologist/Barber, Esthetician, Electrologist, and Nail Technician

Licensing Act Rules are found at Utah Code R. 156-11a-101 *et. seq.* (Complaint p. 9).

    20.  Rule R 156-11a-705 ("Rule 705") provides the curriculum required to satisfy 2000

hours of Cosmetology/Barber School or 2500 hours of apprenticeship before being qualified to

apply for a cosmetologist/barber license. (Complaint p. 9; Stewart deposition pp. 32-34, 42-43,

81-83, 85).

    21.  Rule R 156-11a-705 establishes that the curriculum for cosmetology/barber school

must consist of instruction in the following subject areas:

    (1) introduction consisting of:
        (a) history of barbering, cosmetology/barbering, esthetics, nail technology; and
        (b) overview of the curriculum;
    (2) personal, client and salon safety including:
        (a) aseptic techniques and sanitary procedures;

6

(b) disinfection and sterilization methods and procedures;

(c) health risks to the cosmetologist/barber;

(3) business and salon management including:

    (a) developing clientele;

    (b) professional image;

    (c) professional ethics;

    (d) professional associations;

    (e) public relations; and

    (f) advertising;

(4) legal issues including:

    (a) malpractice liability;

    (b) regulatory agencies; and

    (c) tax laws;

(5) human immune system;

(6) diseases and disorders of skin, nails, hair, and scalp including:

    (a) bacteriology;

    (b) sanitation;

    (c) sterilization;

    (d) decontamination; and

    (e) infection control;

(7) implements, tools and equipment for cosmetology, barbering, basic esthetics and nail technology, including:

    (a) high frequency or galvanic current; and

    (b) heat lamps;

(8) first aid;

(9) anatomy;

(10) science of cosmetology/barbering, basic esthetics and nail technology;

(11) analysis of the skin, hair and scalp;

(12) physiology of the human body including skin and nails;

(13) electricity and light therapy;

(14) limited chemical exfoliation including:

    (a) pre-exfoliation consultation;

    (b) post-exfoliation treatments; and

    (c) chemical reactions;

(15) chemistry for cosmetology/barbering, basic esthetics and nail technology;

(16) temporary removal of superfluous hair including by waxing;

(17) properties of the hair, skin and scalp;

(18) basic hairstyling including:

    (a) wet and thermal styling;

    (b) permanent waving;

    (c) hair coloring;

7

(d) chemical hair relaxing; and

(e) thermal hair straightening;

(19) haircuts including:

    (a) draping;

    (b) clipper variations;

    (c) scissor cutting;

    (d) shaving; and

    (e) wigs and artificial hair;

(20) razor cutting for men;

(21) mustache and beard design;

(22) basic esthetics including:

    (a) treatment of the skin, manual and mechanical;

    (b) packs and masks;

    (c) aroma therapy;

    (d) chemistry of cosmetics;

    (e) application of makeup including:

        (I) application of artificial eyelashes;

        (ii) arching of the eyebrows;

        (iii) tinting of the eyelashes and eyebrows;

    (f) massage of the face and neck; and

    (g) natural manicures and pedicures;

(23) medical devices;

(24) cardio pulmonary resuscitation (CPR);

(25) artificial nail techniques consisting of:

    (a) wraps;

    (b) nail tips;

    (c) gel nails;

    (d) sculptured and other acrylic nails; and

    (e) nail art;

(26) pedicures and massaging of the lower leg and foot;

(27) elective topics; and

(28) Utah Cosmetology/Barber Examination review.

(Complaint at pp. 9-10; Stewart deposition pp. 33-64).

22. Defendant and its expert witness, Judith Kasue, hold that some of the subject areas set forth in Rule 705 apply to the technique of African hair braiding. (Stewart deposition pp. 33-64, 73, 74; Kasue deposition pp. 30-39, 42-43).

23.  Only the legislature can change the 2000 hour requirement for licensure set forth under Utah Code Ann. § 58-11a-302(4). (Stewart deposition p. 21, Steinagel deposition pp.108-109).

## ARGUMENT

**POINT I. UTAH'S COSMETOLOGY/BARBER CURRICULUM REQUIREMENTS AS APPLIED TO HAIR BRAIDING ARE RATIONALLY RELATED TO THE STATE'S INTEREST TO PROTECT THE PUBLIC HEALTH, SAFETY AND WELFARE AND DO NOT VIOLATE DUE PROCESS OR EQUAL PROTECTION**

### A.  Due Process

Plaintiff contends that the Utah Cosmetology/Barber Act and Rule 705 violate the Due Process Clause of the Fourteenth Amendment. Complaint p. 16. The Court's review of Plaintiff's due process claim must be based on the rational relation test, i.e., the means employed by the state must be rationally related to a legitimate state interest. Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 124-25 (1978). In order to prove a substantive due process claim, a plaintiff must plead and prove that the government's action was clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare. Village of Euclid v. Amber Realty Co., 272 U.S. 365, 396 (1926).

The cosmetology/barber curriculum requirements set forth under the Act and Rule are rationally related to a legitimate state interest to protect the public health, safety and welfare and, as such, do not violate Plaintiff's right to due process.

The Utah Cosmetology/Barber Act, Utah Code Ann. § 58-11a-302(4) provides the following curriculum requirements for a person to become a cosmetologist/barber in the state of

9

Utah:

> (i) graduation from a licensed or recognized cosmetology/barber school
> whose curriculum consists of a minimum of 2,000 hours of instruction,
> with full flexibility within the 2,000 hours, or the equivalent number of
> hours over a period of not less than 50 weeks;

The 2000 hour curriculum requirement is mandatory and cannot be changed absent

legislative action to modify the requirement.  This provision of the Act was passed by the Utah

State Legislature as part of a comprehensive bill to regulate the cosmetology profession prior to

1981. The Act was passed to establish cosmetology as a profession rather than a craft. (Kasue

deposition pp. 55-56; Sally Stewart deposition pp. 75, 86)   Defendant notes that public safety

health and welfare are significant reasons for the regulation of the cosmetology/barber industry.

An equally compelling reason for regulation is when compensation is involved.  The exchange of

money for services involves a greater degree of scrutiny by the state and need for regulation.

(Mark Steinagel, deposition pp. 35-38).

The state's interest to regulate the cosmetology/barber profession is important for the

protection of public health and safety and welfare.  In particular, the styling of hair, including

hair braiding, requires knowledge of sanitation, sterilization, diseases of the skin and scalp as

well as an understanding of business and business laws including local and state health

requirements. (Stewart deposition at pp. 50-51, 75-77; Kasue deposition pp. 58-59, 125-126).

Sanitation and sterilization requirements are necessary to protect the public and the licensed

professionals from harm caused by the transmission of lice and diseases like HIV AIDS.

Knowledge of diseases of the skin and scalp are important for public health and safety to protect

10

the client from problems of the scalp like eczema that could be exacerbated by braiding. (Kasue deposition pp. 48-50, 125-126). Knowledge of business, business laws and salon management are important for the financial protection of both the hair braider and the client. (Kasue deposition pp. 55-56; Stewart deposition p. 52). Plaintiff contends that there is no need for regulation of hair braiding regarding the protection of public health and safety. (Ferrell expert report p. 5; Ferrell deposition p. 86-87).

Court's have routinely upheld state power to legislate against injurious practices in their internal commercial and business affairs. In particular, the United States Supreme Court has noted that "it is up to the legislatures and not the courts, to decide on the wisdom and utility of legislation." Ferguson v. Skrupa, 372 U.S. 726, 730 (1963).

Similarly, a federal district court in Washington D.C. found that the D.C. Council's curriculum requirements for African hair braiding did not violate the due process clause of the Constitution. Uqdah v. District of Columbia, 785 F. Supp. 1015 (1992).[1] In Uqdah, the court found that District of Columbia's cosmetology regulations were rationally related to the goal of providing clean and safe cosmetology services to the public. Id. at 1018.

Regarding social and economic regulation, the court in Uqdah noted the due process clause did not permit it to scrutinize social or economic regulation with "a fine tooth comb or to become involved in the business of legislating from the bench." Id. at 1019. See also Williamsen

---

[1] Although the Uqdah case was vacated and remanded, it is Defendant's understanding that the case was vacated because the D.C. Council changed the law to exempt African hairbraiding from its licensure requirements.

11

v. Lee Optical, 348 U.S. 483 (1955).

The burden is on the one complaining of a due process violation to establish that the legislature acted in an arbitrary and irrational way. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976).  Plaintiff has not shown and cannot show that the Legislature acted in an arbitrary or irrational way when it passed the Act; therefore her due process claim fails.  Plaintiff is not aware of the legislature's intent when it enacted the curriculum requirements. Plaintiff does not know if the legislature intended to discriminate against African hair braiders when it passed the Act.  Plaintiff has no proof of legislative intent or intent by the Division to enforce the cosmetology/barber rules and law in such a way that denies her due process.  Defendant has enforced the Act against hair braiders but only because they were operating without a license and not for economic protectionism or discriminatory reasons. (Stewart deposition pp. 21-23, 27; Steinagel deposition pp. 32-34).

Absent a showing that the Act is arbitrary and irrational as applied to African hair braiding, Plaintiff claim of a due process violation fails and must be dismissed.

**B. Equal Protection**

Plaintiff's right to equal protection has not been violated. The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." F.S.  Royster Guano Company v. Virginia, 253 U.S. 412, 415 (1920).  A violation occurs if the state treats a person differently from one who is similarly situated, without justification for the different treatment. City of Cleburne v. Cleburne Living Ctr. 473 U.S. 432, 439 (1985). A plaintiff who claims violation of his equal protection rights must allege specific facts that show a discriminatory

12

purpose was a motivating factor in the decision plaintiff challenges. <u>Watson of Kansas City,</u>

<u>Kan.,</u> 857 F.2d 690, 694 (10th Cir. 1998). Plaintiff must show that the Act creates a classification

scheme where persons similarly situated are treated differently, or where differently situated

person are treated the same, which she has not done here.

Plaintiff is being treated the same as anyone else who wishes to practice cosmetology in

that she must go to cosmetology school and meet the 2000 hour curriculum requirement. Plaintiff

has not shown that the Act and Rule 705 were passed in a discriminatory way to prevent her from

braiding hair. As has been previously noted, the Act was passed to regulate cosmetology as a

profession rather than a craft.

As a general rule, the courts give deference to legislative action when local economic

regulation is challenged as violating the equal protection clause. <u>New Orleans v. Dukes,</u> 427 U.S.

297, 303 (1976). In <u>Dukes,</u> the United States Supreme Court noted that unless a classification

trammels fundamental personal rights or is drawn upon suspect distinctions such as race, religion

or alienage, the constitutionality of the discrimination will be presumed if it is rationally related

to a legitimate state interest. Id at 303.

Plaintiff has not shown that the curriculum requirements set forth in the Act and Rule 705

are a classification that affect a fundamental personal right or were drawn based upon a suspect

distinction like race or religion. Plaintiff merely argues that her economic interests are affected.

(Complaint p. 2). It is not enough to assert an economic interest; Plaintiff must show an

invidious discrimination to prove an equal protection violation. Moreover, economic interests do

not rise to the level of a fundamental right, nor are they a suspect classification for equal

13

protection purposes. <u>F.C.C. v. Beach Communications Inc</u>. 508 U.S. 307 (1993).

Defendant is aware of a case, <u>Cornwell v. California</u>, 80 F. Supp. 2d 1101 (1999), where the court found that the requirements of California's cosmetology law and regulations were not rationally related to the state's interest in regulating the cosmetology profession as a whole.

The <u>Cornwell</u> case, however, can be distinguished from this case. California's curriculum requirements were different from Utah's most notably in the area of sanitation and sterilization. The court in Cornwell also didn't address courses on skin and scalp diseases, business courses and legal courses which are at issue here. The court in <u>Cornwell</u> found that the course work on sanitation only amounted to 4 percent of the total curriculum requirements. The courses that Defendant believes are applicable to hair braiders under Utah's curriculum requirements are roughly 30 to 40 percent of the curriculum requirements.

## C.  Privileges and Immunities

Plaintiff's argument that Utah's cosmetology rules and regulations arbitrarily and unreasonably impair her ability to pursue her livelihood by forcing her to obtain a license that is unrelated to her profession in violation of the Privileges or Immunities guarantee of the Fourteenth Amendment is without merit and must be dismissed.

The Privileges and Immunities and Immunities Clause of the Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States." U.S. Const. amend. XIV, §1, cl. 2.  The United States Supreme Court, however, has severely limited the reach of the Privileges and Immunities Clause in the <u>Slaughter House Cases</u>. 83 U.S. 36 (1872).  The Court held that the clause only

14

secures those rights which "own their existence to the Federal Government, its national character, its Constitution or its laws." Id. at 79. The Court also made it very clear that the traditional privileges "which are by their nature fundamental; which belong of right, to the citizens of all free governments," such as the right to engage in one's profession of choice, were not protected by the Privileges and Immunities Clause if they were not of a federal character. Merriffield v. Lockyer, 547 F.3d 978, 983 (9th Cir. 2008) (quoting the Slaughter-House Cases), 83 U.S. (16 Wall.) at 78-79.

Plaintiff has no specific right to practice her profession as an African hair braider that is guaranteed under the Privileges and Immunities Clause of the Fourteenth Amendment.

Moreover, it is well settled that the police power of the states extends to the regulation of certain trade and callings, particularly those which concern the public health. Turner Broad Sys., Inc. v. FCC, 520 U.S. 189, 189-90 (1997).  Plaintiff contends that African hair braiding is unique and does not concern public health. (Ferrell deposition pp. 39-43, 87).  Defendant disagrees and points to cases of head lice that have been transmitted to the public through beauty salons in Utah. (Stewart deposition p.6; Kasue deposition pp. 48-50) Because the state has a legitimate interest in regulating the profession for public health purposes all it must show is that the regulation has a rational basis which it has done in this case.

## II.  THE COURT SHOULD DECLINE TO EXERCISE ITS JURISDICTION TO RULE ON PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS

The Court should decline to exercise its supplemental jurisdiction to rule on Plaintiff's state constitutional claims. The general rule is that if federal claims are dismissed before trial

leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. <u>Bachman v. West High School</u>, 132 F.3d 542, 549 (1997).

Plaintiff can seek appropriate redress in state court on her state constitutional claims by challenging Rule 705 through the Utah Administrative Rulemaking Act. Utah Code Ann. 63G-3-602. The Rulemaking Act states that any interested person may petition an agency to request the making, amendment or **repeal** of a rule. In addition, the Rulemaking Act allows any person aggrieved by a rule to obtain judicial review of the rule by filing a complaint in district court where the person resides or in the district court of Salt Lake County. Utah Code Ann. 63G-3-602(1)(a). Moreover, the rulemaking act states that the district court may grant relief to the petitioner by declaring the rule invalid, if the court finds that the rule "violates constitutional or statutory law or the agency does not have legal authority to make the rule," Utah Code Ann. § 63G-3-602(4)(a). Plaintiff has a clearly established procedure under state law to pursue her state constitutional claims; therefore the Court should abstain from ruling and let her proceed to challenge Rule 705 under the Rulemaking Act.

**CONCLUSION**

Plaintiff fails to show how Utah's Cosmetology/Barber Act and Rule 705 are arbitrary and unreasonable and not rationally related to the state's interest to protect the public, health, safety and welfare under the Due Process, Equal Protection and Privileges Immunities Clauses of the Fourteenth Amendment, therefore, Defendant is entitled to summary judgment as a matter of law. Additionally, if the Court dismisses Plaintiff's federal claims, it should decline to exercise

16

its supplemental jurisdiction to rule on Plaintiff's state constitutional claims.

Dated this _____ day of May, 2012.


/s/Laurie L. Noda
Assistant Attorney General
Counsel for Defendant

17

**CERTIFICATE OF SERVICE**

I, Laurie Noda, hereby certify that on May 2, 2012 a true and correct copy of **Defendant's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment** was electronically filed using the court's ECF system and sent via the electronic notification system to:

**Paul Avelar** at
Institute for Justice
Arizona Chapter
398 South Mill Avenue
Suite 301
Tempe, AZ 85281
Email: pavelar@ij.org

Dated at Salt Lake City, Utah this 2nd day of May, 2012.

/s/ Laurie Noda
Assistant Attorney General

18